IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Christopher Baldwin, | Case No. 3:12 CV 1867 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Chief Inspector Croft, et al., | |
| Defendants. | |

## INTRODUCTION

*Pro se* Plaintiff Christopher Baldwin filed this action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction ("ODRC") Chief Inspector Croft and eight Toledo Correctional Institution ("ToCI") employees: Warden Keith Smith, Deputy Warden Factor, Institutional Inspector T. Pinski, Major Parker, Sergeant Brandel, and Corrections Officers Kenny, Hostetler, and Johnson. Plaintiff alleges Defendants were deliberately indifferent to his health and safety when they purposefully housed him with a violent inmate who had threatened to kill him. He seeks injunctive and monetary relief.

Plaintiff also filed an Application to Proceed *in forma pauperis* (Doc. 2) and a Motion for Appointment of Counsel (Doc. 3). Plaintiff's request to proceed *in forma pauperis* is granted. For the reasons discussed below, Plaintiff's Motion for Appointment of Counsel is denied without prejudice.

## BACKGROUND

Plaintiff is a state prisoner currently incarcerated at Allen Correctional Institution ("ACI"). Prior to his transfer to ACI, he was incarcerated at ToCI. While housed there, Plaintiff alleges he was threatened by known gang members with physical violence if he did not comply with unspecified demands. Plaintiff feared for his safety and sought assistance from his Case Manager. Plaintiff's Case Manager agreed Plaintiff was in imminent danger in the inmate general population and indicated Protective Control ("PC") might be an appropriate solution. He referred Plaintiff's request to Major Parker. According to Plaintiff, Parker agreed Plaintiff should be placed in PC and instructed him to write a confidential statement for review by the PC Committee (Doc. 1 at ¶¶ 17–21). Parker indicated Plaintiff would be placed in segregation for his own safety during the pendency of the PC Investigation. When Plaintiff expressed concern he might be placed in a cell with a gang member, Parker allegedly reassured him he would be housed only with inmates who had the same security status as Plaintiff (Doc. 1 at ¶ 24). In segregation, Plaintiff was housed with an inmate who did not share the same security status (Doc. 1 at ¶ 25).

On June 28, 2011, Officers Kenny and Johnson escorted Plaintiff from recreation to his segregation cell. Plaintiff alleges Johnson told him to "be ready for trouble," and Kenny stated "my money is on the other one" (Doc. 1 at ¶¶ 28–29). When Plaintiff asked what they were talking about, Kenny allegedly replied "you'll find out" (Doc. 1 at ¶ 30). Officer Hostetler then joined the escort and allegedly asked Kenny and Johnson "if they had told plaintiff, and they both said no and began to laugh" (Doc. 1 at ¶ 30). Following this exchange, Plaintiff alleges his cellmate in segregation, Gibbons, shouted "if you put that snitch in my cell, I will kill him" (Doc. 1 at ¶ 31). Plaintiff asked the officers not to place him in the cell with Gibbons. Kenny allegedly threatened Plaintiff with pepper spray if he did not enter the cell, and Hostetler told Plaintiff he "was going in

2

the cell the easy way or the hard way" (Doc. 1 at ¶ 34). When Plaintiff resisted, the officers forced him into the cell while he was handcuffed behind his back.

Plaintiff alleges Gibbons brutally attacked him the moment the cell door closed. Johnson intervened, but only to remove Plaintiff's handcuffs. Kenny, Hostetler, and Johnson allegedly watched through the window in the cell door as Gibbons assaulted Plaintiff, but did nothing to stop the assault. For the next four hours, Plaintiff repeatedly pushed the emergency button in his cell, banged on the cell door, and begged the officers to remove him. He claims Kenny and Hostetler returned on two separate occasions and warned him he would be sprayed with pepper spray if he did not stop banging on the door (Doc. 1 at ¶¶ 36–39). Plaintiff further claims he told Kenny and Hostetler he needed medical attention, but they refused his request (Doc. 1 at ¶ 41). Plaintiff then informed the officers he would kill himself if he was not removed from the cell, to which Kenny allegedly replied, "go ahead, save us tax payers money" (Doc. 1 at ¶ 42).

Shortly after the alleged assault, Hostetler and an unidentified nurse made rounds through the segregation block. Plaintiff cut his wrist with a razor and showed the nurse his injury as she passed his cell. The nurse ordered Hostetler to open the cell, and Plaintiff was removed from segregation and placed on suicide watch (Doc. 1 at ¶¶ 46–48). Plaintiff claims he remained on suicide watch for four days before being released and returned to segregation. He asserts he was never assessed or treated by a psychiatrist during this period (Doc. 1 at ¶¶ 49–51).

Sergeant Brandel visited Plaintiff before he was released from the suicide watch cell and asked Plaintiff to explain what had occurred on June 28. Plaintiff complied, and Brandel informed Plaintiff he would "have a talk with" Kenny, Hostetler, and Johnson. Brandel also discussed Plaintiff's request for PC and asked him to complete another confidential statement for review by the PC Committee. Plaintiff did so and was returned to segregation (Doc. 1 at ¶¶ 52–60).

3

Plaintiff claims he suffered "countless forms of retaliation" from Kenny, Hostetler, Johnson, and Brandel. He asserts he wrote numerous complaints and grievances regarding the June 28 incident but claims he has not received appropriate relief (Doc. 1 at ¶¶ 62–64). Plaintiff states he was completely overwhelmed by the entire ordeal, and attempted suicide on two occasions during the 180-day period in segregation pending a PC investigation (Doc. 1 at ¶ 65).

Plaintiff filed this Complaint on July 19, 2012 (Doc. 1). He alleges Defendants Kenny, Hostetler and Johnson violated his Eighth Amendment rights by: (1) forcing him into a segregation cell with Gibbons; (2) leaving him in the cell after Gibbons began assaulting him; (3) allowing him to remain in the cell with Gibbons for four hours after the assault; and (4) failing to ensure he received medical attention following the assault (Doc. 1 at ¶¶ 67–70). He alleges Defendants Brandel, Parker, Pinski, Factor, Smith and Croft are liable as supervisory officials because they were made aware of, but failed to "respond reasonably," to "Plaintiff's health and safety needs" (Doc. 1 at ¶¶ 71–76). Plaintiff seeks injunctive and monetary relief.

### STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. 28 U.S.C. § 1915(e)(2). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory, or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading

4

must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. A Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## ANALYSIS

Plaintiff states causes of action against Croft, Smith, Factor, Pinski, Parker, Brandel, Kenny, Hostetler, and Johnson in both their official and individual capacities. This Court will address each of these types of claims in turn.

### A. Official Capacity Claims

The Supreme Court has held "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As Croft, Smith, Factor, Pinski, Parker, Brandel, Kenny, Hostetler, and Johnson are employed by ToCI and ODRC, and are therefore state employees, Plaintiff's official capacity claims against these Defendants are construed against the State of Ohio.

The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005). Alternatively, a plaintiff may sue a state for damages in federal court if the case concerns a federal statute that was passed by Congress pursuant to Section 5 of the Fourteenth Amendment and expresses a clear congressional intent to abrogate sovereign immunity. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55 (1996).

In this case, Ohio has not waived its sovereign immunity. *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). In addition, the Supreme Court has held the federal statute invoked in this case, 42 U.S.C. § 1983, was not intended to abrogate the states' Eleventh Amendment immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989). Because the Eleventh Amendment bars suits for monetary damages against state employees sued in their official capacities, Plaintiff's official capacity claims against Croft, Smith, Factor, Pinski, Parker, Brandel, Kenny, Hostetler, and Johnson for monetary relief are dismissed for failure to state a claim upon which relief may be granted.

A claim for prospective injunctive relief may proceed against a state official sued in his official capacity. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991). Here, Plaintiff seeks preliminary and permanent injunctions ordering Defendants to cease violating his Eighth Amendment rights. The Complaint, however, indicates Plaintiff was transferred to ACI and is no longer incarcerated at ToCI (Doc. 1 at 1, 14). Because Plaintiff does not allege his constitutional rights are being violated at ACI, his claims for injunctive relief are moot.

6

Finally, the Supreme Court has held a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered "persons" for purposes of a Section 1983 claim. *See Will*, 491 U.S. at 71. Consequently, Plaintiff also fails to state claims for monetary damages against these Defendants under Section 1983.

Accordingly, Plaintiff's official capacity claims against Croft, Smith, Factor, Pinski, Parker, Brandel, Kenny, Hostetler, and Johnson are dismissed.

### B. Individual Capacity Claims for Supervisory Liability

Plaintiff alleges Croft, Factor, Pinski, Parker, and Brandel are liable in their individual capacities because they "were made aware of the assault on the plaintiff, the ongoing harassment, and the denial of proper medical and mental health care, yet failed to respond reasonably to the plaintiff's health and safety needs" (Doc. 1 at ¶¶ 71–74, 76). Plaintiff alleges Smith is liable because, as Warden of ToCI, Smith implemented unidentified procedures and policies that allowed subordinates to subject Plaintiff to substantial risks of serious harm (Doc. 1 at ¶ 75). Plaintiff asserts these Defendants are liable in their roles as supervisory officials (Doc. 1 at ¶¶ 77– 80).

Liability under Section 1983 "must be based on more than *respondeat superior*, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To succeed on claims of liability for failure to supervise, a plaintiff must allege facts showing the defendant "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300. At a minimum, a Section 1983 plaintiff must show that a supervisory official implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). There must be a "direct causal link between the acts of individual [employees] and the supervisory defendants." *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982).

7

As the Sixth Circuit has explained, the "denial of an administrative grievance or the failure to act" by prison officials does not subject supervisors to liability under Section 1983. *See Shehee*, 199 F.3d at 300. Where the only specific allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged constitutional violation. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).

With respect to Croft, Pinski, and Factor, the Complaint does not set forth any factual allegations suggesting they directly participated, or were otherwise personally involved, in the allegedly unconstitutional conduct. Although Croft, Pinski, and Factor may have denied Plaintiff's grievances (Doc. 1 at ¶ 64), there is no suggestion in the Complaint that any of them were involved in alleged unconstitutional conduct. Moreover, there is no suggestion of a causal link between the alleged misconduct and any action or inaction by these Defendants. Even construing the Complaint liberally, this Court finds there are no factual allegations suggesting Croft, Pinski, and Factor's involvement in this matter was anything more than a straightforward denial of administrative grievances. Accordingly, Plaintiff has failed to state individual capacity claims against Croft, Pinski and Factor.

With respect to Smith, Plaintiff alleges he implemented policies and procedures that allowed Plaintiff to be subjected to substantial risks of serious harm, including the lack of proper medical and mental health care (Doc. 1 at ¶ 75). Plaintiff, however, fails to identify any such policies or procedures, and to explain how their implementation may have contributed to or resulted in the alleged unconstitutional conduct at issue. Although pleadings filed by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). It is not sufficient to plead "[t]hreadbare

8

recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. Plaintiff has failed to plead facts sufficient to suggest Smith is liable for implementing policies or procedures that resulted in the alleged misconduct. Accordingly, this Court finds Plaintiff has failed to state an individual capacity claim against Smith.

With respect to Parker, Plaintiff's allegations are that he: (1) agreed Plaintiff should be evaluated for placement in PC; (2) instructed Plaintiff to prepare a confidential statement for review by the PC Committee; and (3) assured Plaintiff he would be housed with an appropriate inmate while in segregation (Doc. 1 at ¶¶ 21–24). The Complaint contains no factual allegations suggesting Parker was responsible for, or even aware of, Plaintiff's placement with Gibbons. There are no allegations that Parker authorized, approved of, or knowingly acquiesced in the allegedly unconstitutional conduct. In the absence of any such allegations, this Court finds Plaintiff has failed to plead facts sufficient to support his individual capacity claim against Parker.

Finally, with respect to Brandel, Plaintiff alleges he spoke with Brandel about the June 28 assault and was told Brandel would "have a talk with" Kenny, Hostetler and Johnson (Doc. 1 at ¶¶ 52–54). Plaintiff further alleges Brandel "joined in the retaliation and violations that were constantly visited upon [him] for the 180 days that [he] spent in segregation" (Doc. 1 at ¶ 62). Once again, the Complaint contains no allegations indicating Brandel authorized, approved of, or knowingly acquiesced in any of the events leading up to the June 28 incident. While Plaintiff claims Brandel retaliated against him after he filed grievances, there are no factual allegations to support this claim. Plaintiff does not describe the nature of Brandel's retaliatory actions or explain sufficiently the reasons for Brandel's alleged retaliation. In the absence of such allegations, this Court finds Plaintiff has failed to state a claim against Brandel in his individual capacity.

For the reasons set forth above, this Court finds Plaintiff's individual capacity claims against Croft, Smith, Factor, Pinski, Parker, and Brandel fail to state a claim upon which relief may be granted and are subject to summary dismissal pursuant to Section 1915(e). The only remaining claims in this action, therefore, are Plaintiff's individual capacity claims against Kenny, Hostetler, and Johnson for Eighth Amendment violations.

**C.     Eighth Amendment Claims against Kenny, Hostetler and Johnson**

Plaintiff alleges Kenny, Hostetler, and Johnson were deliberately indifferent to his health and safety in violation of the Eighth Amendment when they: (1) forced him into a segregation cell with Gibbons; (2) left him in the cell after Gibbons began assaulting him; (3) allowed him to remain in the cell with Gibbons for four hours after the assault; and (4) failed to ensure he received medical attention following the assault (Doc. 1 at ¶¶ 67–70).

The Supreme Court has held "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a constitutional violation based on a failure to protect, an inmate must first show the failure to protect him from risk of harm is objectively "sufficiently serious." *Id*. at 834. Specifically, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* A plaintiff must then establish that prison officials acted with "deliberate indifference" to his health or safety. *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id*. at 766–67.

Plaintiff alleges Kenny, Hostetler, and Johnson intentionally placed him in the same cell with a violent inmate who had threatened to kill him. He claims Defendants overheard Gibbons shouting

10

"if you put that snitch in my cell, I will kill him" (Doc. 1 at ¶ 31). He claims Kenny threatened Plaintiff with pepper spray if he did not enter the cell, and Hostetler told Plaintiff he "was going in the cell the easy way or the hard way" (Doc. 1 at ¶¶ 33–34). When Plaintiff resisted, he claims the officers forced him into the cell where he was brutally attacked by Gibbons the moment the cell door was closed. He claims Defendants watched the assault through the window of the cell door, but did nothing to stop the assault. For the next four hours, Plaintiff alleges he repeatedly pushed the emergency button in his cell, banged on the cell door, and begged the officers to remove him. He claims Defendants refused to do so, and also refused to provide him with medical attention. Finally, Plaintiff claims he informed the officers he would kill himself if he was not removed from the cell, to which Kenny allegedly replied, "go ahead, save us tax payers money" (Doc. 1 at ¶ 42). Plaintiff claims he then cut his wrist with a razor (Doc. 1 at ¶ 46).

On the face of the Complaint, this Court finds these allegations meet the pleading standards of Federal Civil Rule 8 to state a plausible claim for deliberate indifference to Plaintiff's health and safety in violation of the Eighth Amendment. Accordingly, Plaintiff will be permitted to proceed against Kenny, Hostetler, and Johnson in their individual capacities.

### D. Motion for Appointment of Counsel

On July 19, 2012, Plaintiff filed a Motion for Appointment of Counsel (Doc. 3). In that Motion, Plaintiff argues he is indigent and unable to secure funds to hire private counsel. He argues the issues involved in this matter are complex, and his imprisonment will greatly limit his ability to proceed *pro se*. He claims he has no formal education or legal training and limited access to the prison law library.

Appointment of counsel in a civil case is not a constitutional right. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). It is a privilege justified only by exceptional circumstances. *Id.*

In considering whether "exceptional circumstances" exist, courts consider the plaintiff's ability to represent himself, the chance of success of plaintiff's claims, and the complexity of the case. *Lavado*, 992 F.2d at 606. This Court finds this case does not present the "exceptional circumstances" requiring the appointment of counsel. While his case is still in its early stages, Plaintiff has adequately demonstrated he is capable of representing himself.

Plaintiff's Motion for Appointment of Counsel (Doc. 3) is denied without prejudice.

### CONCLUSION

For the above reasons, Plaintiff's claims against Croft, Smith, Factor, Pinski, Parker, and Brandel are dismissed pursuant to 28 U.S.C. § 1915(e). Plaintiff's official capacity claims against Kenny, Hostetler, and Johnson are also dismissed pursuant to 28 U.S.C. § 1915(e). This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. This action shall proceed solely on Plaintiff's Eighth Amendment deliberate indifference claims against Kenny, Hostetler, and Johnson in their individual capacities. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this Order in the documents to be served upon Kenny, Hostetler, and Johnson.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

November 29, 2012