IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Christopher Baldwin | Case No. 3:12 CV 1867 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Officer Kenny, et al., | |
| Defendants | |

### INTRODUCTION

Pending before this Court is Defendants' Motion for Summary Judgment (Doc. 25), Plaintiff's Opposition (Doc. 29), and Defendants' Supplemental Memorandum (Doc. 32). For the reasons stated below, this Court finds Defendants' Motion to be well-taken and grants summary judgment.

### BACKGROUND

*Pro se* Plaintiff Christopher Baldwin, a prisoner in state custody, filed a Complaint under 42 U.S.C. § 1983, alleging that Defendants Kenney, Johnson, and Hostetler, former corrections officers at Toledo Correctional Institution ("TCI"), violated his Eighth Amendment rights on June 28, 2011, when they forced him into a segregation cell with another inmate who intended to and did harm Plaintiff (Doc. 1 at ¶ 67). All other defendants and claims have been dismissed pursuant to 28 U.S.C. § 1915(e) (Doc. 4 at 12).

**STANDARD OF REVIEW**

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, this Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**DISCUSSION**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (quoting 42 U.S.C. § 1997e(a)). To satisfy the PLRA's exhaustion requirement, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." *Peterson v. Cooper*, 463 F. App'x 528, 530 (6th Cir. 2012) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007). Failure to exhaust administrative remedies is an affirmative defense. *Napier*, 636 F.3d at 225. Summary judgment is appropriate if

Defendants "establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin,* 639 F.3d 236, 240 (6th Cir. 2011) (quoting Federal Civil Rule 56(a)).

Ohio's Inmate Grievance Procedure is a three-step process. *See* Ohio Admin. Code 5120-9-31(K). Step one is filing an Informal Complaint Resolution ("ICR") within fourteen calendar days of the event that is the subject of the complaint. *Id.* at (K)(1). An inmate next files a Notice of Grievance ("NOG") if he is dissatisfied with the response to the ICR, or if step one has been waived. *Id.* at (K)(2). He must do so within fourteen calendar days of the response or waiver. *Id.* If the inmate is dissatisfied with the response to his NOG, or step two has been waived, he may file an appeal to the chief inspector within fourteen calendar days of the NOG disposition or waiver. *Id.* at (K)(3). "Informal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses." *Id.* at (K). If the inmate does not know the identity of the personnel involved, he may file a "John/Jane Doe" complaint and must include a physical description of the unknown personnel. *Id.* Beyond the three-step procedure outlined above, "[g]rievances against the warden or inspector of institutional services must be filed directly to the office of the chief inspector within thirty calendar days of the event giving rise to the complaint." Ohio Admin. Code 5120-9-31(M).

Defendants claim they are entitled to judgment as a matter of law because Plaintiff failed to exhaust his administrative remedies before filing the instant suit (Doc. 25 at 7). First, they claim Plaintiff did not file a proper ICR or NOG against Defendants, failing to identify the individual corrections officers responsible for the alleged assault (Doc. 25 at 7). Second, Defendants argue that although Plaintiff filed a Direct Grievance, it "is improper as it pertains to Defendants" because Direct Grievances may only be filed against an institution's Warden or Institutional Inspector (Doc. 25 at 7).

3

Defendants are correct that Plaintiff never named them or gave physical descriptions of them in written grievances related to the assault, as required by the Ohio Inmate Grievance Procedure. *See* Ohio Admin. Code 5120-9-31(K). The closest Plaintiff came to naming Defendants is the ICR which describes the officers involved in the assault as three second-shift officers (Doc. 29-1 at 5). Further, Plaintiff's first mention of Defendants in relation to the assault was in that same ICR, dated November 28, 2011, a full five months after the alleged assault (*id.*). Consequently, Plaintiff has failed to exhaust the grievance process as established in Ohio Administrative Code 5120-9-31(K).

However, Plaintiff claims he "sought all remedies that were available to him, but was denied relief" under the circumstances because he feared retaliation (Doc. 29 at 2). He claims it was clear to him Defendants "would have hurt him again (or worse) if he 'snitched' about the incident to the officers['] supervisor" (Doc. 29 at 3). Further, because Defendants and another guard "ruthlessly threatened and constantly intimidated" him, he dared not mention them in complaints until it was safe to do so (*id.*). Due to Defendants' threats, intimidation, and retaliation, Plaintiff feels he was precluded from using the grievance system (*id.* at 5).

Plaintiff relies on cases outside this Circuit to support his assertion that the grievance system was actually unavailable to him because of Defendants' actions (*id.* at 4–5). *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (holding that "in some circumstances, the behavior of the defendants may render administrative remedies unavailable," making the PLRA's exhaustion requirement inapplicable); *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (holding that a "prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy 'unavailable'"). However, the Sixth Circuit requires that a prisoner at least make "affirmative efforts to comply with the administrative procedures" before analyzing whether those "efforts to exhaust were sufficient under the

4

circumstances." *Risher*, 639 F.3d at 240 (quoting *Napier*, 636 F.3d at 224). "[T]he Court will not consider exceptions to exhaustion where the plaintiff has not shown that she at least attempted to file a grievance." *Holt v. Campbell County, Ky.*, 2012 WL 2069653 (E.D. Ky. 2012). A prisoner claiming failure to file because of fear must also "describe with specificity" the factual basis for his fear. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004).

This Court need not consider the approach of other circuits because Plaintiff's argument fails on four grounds under the Sixth Circuit's requirements: (1) Plaintiff's allegations of intimidation, retaliation, and threats lack specificity; (2) he knew to seek help from staff of higher authority within TCI, but failed to do so within the grievance procedure's timeframe; (3) he knew he had to exhaust administrative remedies and failed to do so; and (4) his claims are inconsistent with his initial grievances regarding the alleged assault.

**Plaintiff's General Claims**

Plaintiff's claim of fear lacks specificity. He alleged in his Complaint that Defendants' retaliations caused the grievance system to be unavailable (Doc. 1 at ¶¶ 61-64). In his declaration opposing summary judgment, he alleges Defendants directly threatened him with physical harm if he snitched on them for taking part in the alleged assault (Doc. 29 at 8, ¶ 2). He also wrote in his grievances and kite communications about his fear because of unnamed officers' reputations, not their direct threats; and of alleged retaliations at the hands of Defendants, including denial of recreation (Doc. 25-2 at 11) and denial of showers (Doc. 29-1 at 4). Aside from the denial of recreation and showers, Plaintiff provides no dates and times of threats and no specific actions or words of those making threats. Plaintiff fails to detail any particular encounters in which he was directly threatened or otherwise prohibited from using the grievance system. *See Cullins v. Page*, 2013 WL 2148484 (S.D. Ohio 2013) *report and recommendation adopted,* 2013 WL 1181610 (S.D. Ohio 2013) (granting

5

summary judgment because plaintiff "provided no specific information about who, when, where, or how he was prevented from pursuing the prison grievance procedure"). Plaintiff has given this Court only legal conclusions unsupported by specific facts, making his assertions too general to support a plausible claim. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (requiring enough facts to state a claim to relief that is plausible on its face).

### Plaintiff's Belated Efforts to Seek Help from Higher Authority

The record reveals that Plaintiff sought the help of higher ranking TCI staff regarding the assault and his fear of retaliations. Plaintiff contacted both Deputy Warden Factor and Institutional Inspector Pinski. Plaintiff's kite communication and grievances from November 2011 reveal that he told Deputy Warden Factor in October 2011 about the alleged assault and Defendants' roles in the assault (Docs. 29-1 at 2 & 25-2 at 12). Plaintiff claims this yielded no result and asked to meet with Inspector Pinski and tell her about the retaliations he was suffering (Doc. 29-1 at 2). Plaintiff then filed an ICR, claiming Inspector Pinski met with him and that he gave her a list of names, dates, and times of retaliations, in addition to information on the alleged assault (*id.* at 5). Plaintiff sent Inspector Pinski another kite in December 2011, claiming one of the officers involved in the June 28 assault, Defendant Kenney, was retaliating by denying him recreation and showers (*id.* at 4).

While these grievances and kites reveal he felt safe enough to contact those with higher authority and that he made efforts to do so, Plaintiff did not seek the help of Deputy Warden Factor or Inspector Pinski until October 2011, four months after the alleged assault. Prior to this time, there is no record of Plaintiff attempting to grieve the Defendants' roles in the alleged assault to anyone within TCI, and Plaintiff fails to give any reason for his delay in seeking help from those in higher positions. Plaintiff fails to demonstrate that he made timely affirmative efforts to comply with the grievance procedure. *See Risher*, 639 F.3d at 240.

6

**Plaintiff's Knowledge of the Grievance System**

Not only does Plaintiff's grievance file demonstrate he was aware of the grievance system and regularly used it (Docs. 25-2 at 1-52), this is also Plaintiff's third Section 1983 suit against correctional institution employees. *See Baldwin v. Brandle*, 2012 WL 895293 (N.D. Ohio 2012); *Baldwin v. Cain*, 2011 WL 839262 (S.D. Ohio 2011). Given that he has pursued remedies as far as the district court before, Plaintiff was well aware of the requirements he had to meet before bringing the instant suit. He failed to meet those requirements, and his vague allegations of fear will not excuse that failure.

**Plaintiff's Inconsistent Claims**

Finally, the alleged assault took place on June 28, 2011 (Doc. 1 at ¶ 26). Plaintiff began grieving the assault on July 19, 2011 (Doc. 25-2 at 52). At that time, Plaintiff was **not** grieving Defendants, but a different member of TCI, Case Manager Bowers, whom Plaintiff claimed gave confidential information to another inmate, leading that inmate to pay Plaintiff's cellmate to assault him (*id.*). Plaintiff was so convinced Case Manager Bowers was the cause of this alleged assault that he pursued relief through all three stages of the grievance process (*id.* at 52, 36, & 34). His grievances were denied at all stages (*id.* at 52, 35, & 33). Plaintiff did not mention any guard involvement in the assault until five months later when he filed another ICR (Doc. 29-1 at 5).

## CONCLUSION

Plaintiff's inconsistent and noncompliant grievances cannot be excused by mere general allegations of fear and threats. For the foregoing reasons, this Court grants Defendants' Motion for Summary Judgment (Doc. 25). This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

Plaintiff's alternative Motion for Continuance (Doc. 28) to conduct discovery is denied. The discovery Plaintiff seeks would have no bearing on this court's conclusion that Plaintiff failed to exhaust his administrative remedies.

IT IS SO ORDERED.

                                                s/ *Jack Zouhary*
                                           JACK ZOUHARY
                                           U. S. DISTRICT JUDGE

                                           August 23, 2013